UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEO MORENO SALAS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 07-1706 (PLF) |
| | : | |
| OFFICE OF THE INSPECTOR GENERAL, United States Department of Justice, | : : : | |
| | : | |
| Defendant. | : | |

OPINION

This matter is before the Court on defendant's motion for summary judgment. Having considered defendant's motion, plaintiff's opposition, and the entire record of this case, the Court grants summary judgment for defendant.

I.   BACKGROUND

In February 2007, plaintiff submitted a request for information to the Office of the Inspector General ("OIG"), United States Department of Justice ("DOJ"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  *See* Compl. at 1.[1]  He sought "copies of 'the conclusions' of an investigation pertaining to him that he claimed had been undertaken by the OIG in 1994."  Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mot."), Declaration of Deborah Marie Waller ("Waller Decl.") ¶ 2. The OIG released one document after having redacted certain information under FOIA

---

[1]   Plaintiff requested "the final writing [sic] conclusions of the investigations from the special federal agents of the Department of Justice of the city of Tucson, Arizona, R.D. Mauldin and Craig Troutner[.]" Compl. at 1.

Exemptions 6 and 7(C). *Id.* ¶ 3 & Ex. 2 (February 23, 2007 letter from A. Scott, Paralegal Assistant, OIG, regarding Request 07-OIG-85), Ex. 3 (Complaint Form, OIG No.: TC-601-1994-002916-F). The contents of the document were described as follows:

> [It] reflected that on May 11, 1994, the OIG had received by phone an allegation that an employee of the United States Border Patrol (USBP) had used unnecessary force during an encounter with the plaintiff; that the person who had reported the allegation to the OIG was another USBP employee; and that the OIG had not opened an investigation of the allegation.

*Id.* ¶ 3.[2] The DOJ's Office of Information and Privacy upheld the OIG's decision on administrative appeal. *Id*. ¶ 4 & Ex. 4 (June 18, 2007 letter from J.G. McLeod, Associate Director, OIG, regarding Appeal No. 07-0996). In this action, plaintiff demands release of the report in its entirety. *See* Compl. at 1.

## II.  DISCUSSION

### *A.  Summary Judgment Standard*

The Court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits or

---

[2]  In 1994 when this alleged incident occurred, the United States Border Patrol was a component of the DOJ. The Border Patrol and its employees therefore fell within OIG's jurisdiction. Waller Decl. ¶ 5.

declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based on the information provided in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Hertzberg v. Veneman*, 273 F.Supp.2d 67, 74 (D.D.C. 2003).[3] Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B.  Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. *Steinberg v. United States Dep't of*

---

[3]  In support of its motion, defendant submits the declaration of Deborah Marie Waller, a Paralegal Specialist and the OIG's Freedom of Information Act Officer. Waller Decl. ¶ 1. Ms. Waller is "familiar with the procedures followed in processing [FOIA] requests received by the OIG," and also is familiar "with the OIG's response to the FOIA request at issue in this case." *Id.* Her declaration is "based upon [her] personal knowledge, belief, and experience, and upon information made available to [her] in the course of [her] official duties." *Id.*

*Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  To meet its burden, the agency may submit affidavits or declarations explaining in reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id*. at 127.  If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  *Truitt v. Dep't of State*, 897 F.2d at 542.

The declarant explains that the OIG "is responsible for '[i]nvestigat[ing] allegations of criminal wrongdoing and administrative misconduct on the part of [DOJ] employees,' 28 C.F.R. § 0.29a(b)(2), and for auditing and inspecting the programs and operations of [DOJ] and of non-[DOJ] entities that contract with or receive benefits from [DOJ].  *Id.* at § 0.29a(b)(1)."  Waller Decl. ¶ 5.  There are "separate divisions to address [the OIG's] investigative, audit, and inspection functions and [the OIG] maintains separate recordkeeping system relating to those functions."  *Id.*  "Complaints of misconduct by individual [DOJ] employees are reported to and investigated by the OIG's Investigations Division."  *Id*. ¶ 6.  The Investigations Division "maintains a computer database reflecting all complaints received by it *and the disposition of those complaints*."  *Id.* (emphasis added).  One searches the database using the names of subjects, complainants, and victims.  *Id.*

Because plaintiff "sought documents relating to a complaint of misconduct against a [DOJ] employee in which [plaintiff] was the alleged victim," as well as the conclusions of the investigation resulting from that complaint, OIG staff searched the Investigations Division's database using plaintiff's name as a search term.  Waller Decl. ¶ 7.  The search

4

yielded only Complaint Form, OIG No.: TC-601-1994-002916-F, and that one document was released to plaintiff in redacted form.  *Id.* & Ex. 3.

Plaintiff challenges the adequacy of the search.  *See* Plaintiff['s] Second Response to Defendant[']s Motion for Summary Judgment ("Pl.'s Opp'n") at 4, 9.  He asserts that there are additional responsive records maintained "in one of the separate divisions pertaining to the jurisdiction of the [OIG] since that office . . . is responsible for investiging [sic] allegations of criminal wrongdoing and administrative misconduct on the part of justice employees."  *Id.* at 4-5.  To this end, plaintiff recounts the events of the May 11, 1994 incident, with supporting documents, as "evidence that defendant's assertions are untrue."  *Id.* at 5.  All the documents plaintiff submits pertain to criminal proceedings against him for immigration violations.  *See id.*, Attach. 2 (Criminal Complaint and supporting documents).[4]

Plaintiff's submissions do not pertain to the issue at hand, that is, whether the agency conducted an adequate search reasonably expected to uncover responsive records.  "There is no requirement that an agency search every record system," *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), and here the declarant adequately explains the agency's reasons for limiting the search to the OIG Investigations Division database.  Why the search uncovered only the complaint form and no other documents relating to the investigation is unclear, but what is clear is that only the Investigations Division would have relevant documents.  *See* Waller Decl. ¶¶ 5-7.  Furthermore, any facts or factual disputes relating

---

[4]  On May 11, 1994, a Border Patrol agent in a Yuma, Arizona freight yard found plaintiff on a train car concealed in a spool of wire.  *See* Pl.'s Opp'n, Attach. 4 (Record of Deportable Alien, Continuation Page for Form I-213).  The agent had plaintiff get off the train for further interview.  *Id.*  Plaintiff allegedly became agitated and shouted profanities at the agent before lunging at the agent repeatedly, resulting in injuries to plaintiff's mouth and upper lip when he made contact with the flashlight the agent allegedly held up as a defensive tool.  *Id.*  Plaintiff was subdued, handcuffed, and arrested.  *Id.*  After verifying plaintiff's identity, it was determined that he previously had been deported to Mexico in December 1988.  *Id.*

to the events surrounding the May 11, 1994 incident do not establish bad faith on the defendant's part in conducting its search. Plaintiff's "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d at 1201.

### C. Exemptions 6 and 7(C)

Under FOIA Exemptions 6 and 7(C), the OIG redacted from the one-page Complaint Form "only . . . the names, addresses, telephone numbers, social security numbers, dates of birth, pay plans, and EOD dates of the USBP employees who were the subject and the complainant." Waller Decl. ¶ 8.

Both Exemptions 6 and 7(C) are designed to the protect personal privacy interests of individuals named or identified in government records. Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is construed broadly and is "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) (citation omitted). Exemption 7(C), however, applies only to "records or information compiled for law enforcement purposes," to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C).

Although the language of Exemptions 6 and 7(C) is similar, the protection offered differs in scope. *See Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) ("Exemptions 6 and 7(C), though similar, are not coextensive."). Generally, the language of

Exemption 7(C) is broader than that of Exemption 6, and allows an agency to withhold categorically certain information in law enforcement records if its disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989); *see also Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91 (D.C. Cir. 1984) (greater emphasis on protecting personal privacy under Exemption 7(C) than under Exemption 6). Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. Fed. Bureau of Investigation*, 737 F.2d at 91-92, and Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-75; *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d at 1205-06. "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773).

      The Complaint Form "concerns an allegation of work-related misconduct," Waller Decl. ¶ 10, and includes such information as names, social security numbers, and dates of birth of the complainant and the subject. *Id.* ¶ 8. The Court concurs with the OIG that the document is a "personnel, medical or similar file," and thus the OIG meets its threshold requirement for Exemption 6 protection. Likewise, the OIG meets its threshold requirement for purposes of Exemption 7. Its declarant states that the OIG is authorized to and was performing a law enforcement function in receiving and investigating (or declining to investigate) a complaint of employee misconduct arising from the May 11, 2004 incident. *See id.* ¶¶ 5, 8, 11.

At this point, the Court's attention shifts to the personal privacy interest of the Border Patrol employees mentioned in the Complaint Form. Here, there is no dispute that the complainant and the subject (both USBP agents) have a recognized privacy interest in avoiding disclosure of personal information. *See, e.g., Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 152-53 (D.C. Cir. 2006) (recognizing privacy interests of agency personnel, private individuals, and companies who worked on the approval of the controversial drug mifepristone); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting an individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"), *cert. denied*, 494 U.S. 1078 (1990); *Ripskis v. Dep't of Housing & Urban Devel.*, 746 F.2d 1, 3 (D.C. Cir. 1984) (per curiam) (finding substantial privacy interest of HUD employees who received an outstanding performance rating); *Gilbey v. Dep't of Interior*, No. 89-0801 (RCL), 1990 WL 174889, at *1-2 (D.D.C. Oct. 22, 1990) (recognizing Park Police officer's "substantial privacy interest in shielding his personnel evaluations from public view" and withholding job performance evaluations of officer involved in car accident giving rise to requester's tort claim against the government).

Lastly, the Court considers whether the public interest in disclosure of the redacted information outweighs the Border Patrol employees' personal privacy interests. *See Ripskis v. Dep't of Housing & Urban Devel.*, 746 F.2d at 3. Exemption 6 requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976) (internal quotation marks and citation omitted). It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy

interest, and the public interest must be significant. *See Nat'l Archives and Records Admin. v, Favish*, 541 U.S. 157, 172 (2004).

Plaintiff argues that "it is the public interest [] to show that responsible officials acted negligently or otherwise improperly in the performance of their duties." Pl.'s Opp'n at 10. Thus, he appears to assert that disclosure of the redacted information is warranted so that the agency's action with respect to the 1994 incident is open to public scrutiny. This one incident, though of obvious importance to plaintiff, is not one of such magnitude that it outweighs the agency employees' substantial privacy interest. *See, e.g., Voinche v. Fed. Bureau of Investigation*, 940 F. Supp. 323, 329-30 (D.D.C. 1996) (release of names and identifying features of individuals would serve no articulable public interest, and agency properly invoked Exemption 6 to protect individuals' privacy interests), *aff'd*, No. 96-5304, 1997 WL 411685 (D.C. Cir. June 19, 1997), *cert. denied*, 522 U.S. 950 (1997); *Beck v. Dep't of Justice*, 997 F.2d at 1493. The Court concludes that the OIG properly redacted under Exemption 6 the the names, addresses, telephone numbers, social security numbers, dates of birth, pay plans, and EOD dates of Border Patrol employees mentioned in the Complaint Form.

With respect to its reliance on Exemption 7(C), the OIG argues that it "routinely withholds the identities of the law enforcement agents in such circumstances." Waller Decl. ¶ 12. "[F]ederal law enforcement officers, by virtue of the nature of their work, possess strong privacy interests in their identities." *Id.* "[A]bsent proof of some misconduct on their part, revealing their identities does not shed light on agency operations" and, in its view, "there is little or no public interest at stake." *Id.* Defendant's argument for withholding information under Exemption 7(C) is undermined in part by the declarant's assumption, without explanation, that the Border Patrol employees, the subject and complainant mentioned in the redacted

Complaint Form, are law enforcement officers.  At any rate, because the Court determines that the same information properly is withheld under Exemption 6, the Court need not determine whether Exemption 7(C) applies to that same information.  *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

### D.  Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  *Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022 (D.C. Cir. 1999); 5 U.S.C. § 552(b).  The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology  v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir.1979)).

The Court has reviewed the copy of the redacted one-page Complaint Form and concludes that all reasonably segregable information has been released.

III.  CONCLUSION

The Court concludes that the OIG conducted an adequate search for records responsive to plaintiff's FOIA request, that it properly withheld information under Exemption 6, and that all reasonably segregable information has been released.  Absent a genuine issue of fact in dispute and in light of the OIG's demonstrated compliance with the FOIA, the Court grants the OIG's motion for summary judgment.  An Order consistent with this Opinion is issued separately.

DATE: September 10, 2008

/s/_____
PAUL L. FRIEDMAN
United States District Judge